Clifford W. MURPHY, Trustee of American Drilling Service Company Liquidating Trust, Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY, Defendant.

Civ. A. No. 82–3483.

United States District Court, District of Columbia.

Sept. 29, 1983.

---

J. Roger Edgar, Gerald P. Greiman, Washington, D.C., Timothy R. Thornton, St. Louis, Mo., and Edward Greensfelder, Washington, D.C., for plaintiff.

Herbert S. Sanger, Jr., General Counsel, James E. Fox, Associate Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel,

**504**

and Robert C. Glinski, Knoxville, Tenn., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

The Court has before it the parties' cross motions for summary judgment and their memoranda of points and authorities in opposition thereto. Plaintiff is seeking the disclosure of fourteen documents under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), eight of which have been withheld in full and six of which have been partially withheld. Defendant bases its refusal to disclose the documents on Exemption 5, which protects "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Although this language is not perfectly clear on its face, it has been construed to exempt documents which would be privileged in civil discovery. *See, e.g., NLRB v. Sears,* 421 U.S. 132, 148–55, 95 S.Ct. 1504, 1515–19, 44 L.Ed.2d 29 (1975); *EPA v. Mink,* 410 U.S. 73, 85–95, 93 S.Ct. 827, 835–840, 35 L.Ed.2d 119 (1973); *Taxation With Representation v. IRS,* 646 F.2d 666, 668 (D.C.Cir.1981); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980). In this case, the Tennessee Valley Authority ("TVA") claims that the documents sought are protected by both the "deliberative process" and the attorney-client privileges. For the reasons set forth below, the Court concludes that TVA has met its burden of proof and is not required to produce the fourteen documents plaintiff seeks.

## Background

TVA is a corporation wholly owned by the United States government with a statutory mandate to develop the natural resources of the Tennessee Valley and to supply electric power to parts of seven states. *See Fehlhaber Pile Co. v. TVA,* 155 F.2d

864, 865 (D.C.Cir.1946). In 1977, TVA contracted with Zurn Industries for the design and construction of six cooling towers at two nuclear power plants. Plaintiff's predecessor in interest, American Drilling Service Co., was one of Zurn's subcontractors on the projects. TVA decided to defer construction, however, and notified Zurn on August 19, 1981, to begin "winddown procedures." Subsequently, TVA and Zurn met and negotiated for a little over a year and arrived at a final contract settlement which called for a payment by TVA of approximately $17.5 million. Zurn and plaintiff are now engaged in arbitration under their subcontract. TVA is not a party to that proceeding, but cooperated with Zurn's efforts to obtain a confidentiality agreement before releasing any documents relating to its negotiations and settlement pursuant to plaintiff's October 1982 Freedom of Information Act request.* A number of documents have been released and TVA has filed an index of the documents it is withholding under its Exemption 5 claim. All of the documents withheld were written between August 19, 1981, when TVA instructed Zurn to begin its winddown, and September 22, 1982, when TVA's Board of Directors approved the settlement.

## The Deliberative Process Privilege

■ The deliberative process privilege is intended to safeguard the quality of decisionmaking by facilitating frank discussions through the assurance of confidentiality. *NLRB v. Sears,* 421 U.S. 132, 150–53, 95 S.Ct. 1504, 1516–18, 44 L.Ed.2d 29 (1975); *Russell v. Department of the Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982). This policy consideration warrants the protection of "predecisional" documents despite the general philosophy favoring disclosure which underlies FOIA. *Afshar v. Department of State,* 702 F.2d 1125, 1142 (D.C.Cir.1983). The exemption, however, must be narrowly construed. *EPA v. Mink,* 410 U.S. at 87, 93 S.Ct. at 836; *Afshar, supra; Taxation With*

---

* This court granted Zurn's unopposed motion to intervene to protect its interests in confidentiality.

*Representation,* 646 F.2d at 677. Even documents which are predecisional are exempt only if they are part of the deliberative process, and protection may be forfeited if the document is subsequently "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Taxation With Representation,* 646 F.2d at 677–78, quoting *Coastal States,* 617 F.2d at 866. Consistent with this analysis, purely factual information is not exempt from disclosure unless it is so entwined with protected material that segregation is impossible or it would reveal the underlying decisionmaking process. *Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 256, 260 (D.C. Cir.1977).

■ In order to determine whether the deliberative process privilege applies in a particular case, it is necessary to consider the agency's decisionmaking mechanisms and the documents' significance within that structure. *Taxation With Representation,* 646 F.2d at 678–81; *Coastal States,* 617 F.2d at 868–69. At TVA, the three-member Board of Directors has the authority to set agency policy and to act on behalf of the agency, including the power to contract, to settle claims, and to litigate. The staff is responsible for coordinating and developing recommendations through the General Manager, and TVA's General Counsel provides the Board with legal advice.

Here, the documents in question were all written by staff members and agency counsel who were involved in resolving Zurn's contract claims but did not themselves have authority to settle them. *See Taxation With Representation,* 646 F.2d at 680. All fourteen documents are predecisional—they were written after TVA decided to wind down its cooling tower projects but before the Board voted to approve the $17.5 million settlement recommendation. Plaintiff's assertion that TVA made interim decisions while negotiating with Zurn, and therefore that some of the documents were "post-decisional," represents an artificial effort to segment the continuous process of settlement and lacks support in the record.

Similarly, its argument that two documents dated October 28, 1981, and September 28, 1981, (Items 10 and 12 of the Index), are post-decisional because they concern the decision to defer construction—first announced August 19, 1981—rather than settlement itself, also fails, because TVA had not reached a final decision and retained the option of completing construction rather than settling. *See NLRB v. Sears,* 421 U.S. at 151–53, 95 S.Ct. at 1516–18; *Mead Data Central, Inc. v. Department of the Air Force,* 575 F.2d 932, 936–37 (D.C.Cir.1978).

It further appears that the documents in question qualify as "deliberative." All are intra-agency memoranda containing staff evaluations, recommendations, proposals, and suggestions concerning the Zurn settlement process.

> Discussion among agency personnel about the relative merits of various positions which might be adopted in contract negotiations are as much a part of the deliberative process as the actual recommendations and advice which are agreed upon. As such they are equally protected from disclosure by exemption five.

*Mead Data,* 566 F.2d at 257.

■ Defendant's index and affidavits show that the documents were circulated only to concerned staff members, preserving the requisite confidentiality for invoking a FOIA exemption. *See Murphy v. Department of the Army,* 613 F.2d 1151, 1155–59 (D.C.Cir.1979). Plaintiff's argument that TVA waived any possible exemption based on its purported disclosures to Zurn fails for two reasons. First, there is no support in the record for the assertion that TVA supplied Zurn or any other third party with the documents plaintiff seeks. In addition, the mere fact that Zurn necessarily learned some of the *information* contained in the documents—*i.e.,* TVA's bargaining positions—during the course of negotiations does not provide a basis for disclosing these *documents* to plaintiff. *See NLRB v. Sears,* 421 U.S. at 161, 95 S.Ct. at 1521; *Afshar,* 702 F.2d at 1139–40.

■ Finally, the documents in question were not adopted, formally or informally, as

the final agency decision and so have not lost their privileged status. Nor do they constitute a body of "secret law," *Coastal States,* 617 F.2d at 867, either in the sense that they controlled the resolution of Zurn's claim or in the sense that they may be used as "precedent" for other TVA decisions. *See Schlefer v. United States,* 702 F.2d 233, 244 (D.C.Cir.1983). It is clear, rather, that the fourteen documents sought "are directed at a very specific decision," *Mead Data,* 575 F.2d at 935, and it is unlikely that they could in any way "embody the agency's effective law and policy." *ITT World Communications v. FCC,* 699 F.2d 1219, 1236 (D.C.Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 334, 77 L.Ed.2d —— (1983), quoting *NLRB v. Sears,* 421 U.S. at 153, 95 S.Ct. at 1517. *Cf. Schlefer, supra* (indexed opinions of Maritime Administration's chief counsel not exempt); *Taxation With Representation,* 646 F.2d 666 (D.C.Cir.1981) (certain IRS records not exempt).

Disclosure of these documents would be "injurious to the consultative functions of government that the privilege . . . protects." *EPA v. Mink,* 410 U.S. at 87, 93 S.Ct. at 836.

> If government employees expected that every written recommendation, cost analysis, or feasibility opinion—as well as the criteria used in reaching the same—would be the object of intense scrutiny by the party adversely affected thereby, they would be likely only to communicate orally and/or conclusionally. The cost of such an eventuality in terms of efficiency and quality of decisionmaking could be great indeed.

*Mead Data,* 575 F.2d at 936. TVA's ability to function as an independent corporate entity, which inevitably includes negotiating and settling contract claims, would be seriously undermined if the internal documents reflecting its employees' thought processes were subject to disclosure. In addition to interfering with TVA's statutory mandate to operate like a "private business corporation," H.R.Rep. No. 130, 73d Cong., 1st Sess. 19 (1933), revealing such documents would decrease the likelihood that future claims against TVA will be resolved by negotiation rather than by litigation, and would therefore defeat the public policy which favors compromise over confrontation. *Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Autera v. Robinson,* 419 F.2d 1197, 1199 (D.C.Cir.1969).

### The Attorney-Client Privilege

 TVA also correctly asserts that the attorney-client privilege protects a number of the disputed documents. Like the deliberative process privilege, the attorney-client privilege helps improve the quality of agency decisionmaking by safeguarding the free flow of information that is a necessary predicate for sound advice. *Mead Data,* 566 F.2d at 252. The focus of the two privileges differs, however: while the deliberative process exemption applies mainly to the exchange of *opinions,* and certain facts which are particularly intertwined or revealing, the attorney-client privilege applies primarily to facts divulged by client to attorney, but . . . also includes opinions from attorney to client based on those facts." *Brinton v. Department of State,* 636 F.2d 600, 605–06 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). Here, two documents sought are requests for legal advice (Items 5 and 15 of the Index) and three others are responses by TVA's General Counsel (Items 1, 4, and 11). Because all the elements of the attorney-client privilege are satisfied for each document, TVA is justified in withholding them.

 Items 5 and 15—requests for legal advice from TVA's General Counsel—fall within the privilege because they were confidential when made and no waiver has occurred. Although copies were circulated within TVA to employees involved in the Zurn negotiations, such limited dissemination does not amount to a breach of confidentiality in the corporate attorney-client context. *See Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

Items 1, 4, and 11 are also internal TVA memoranda and contain legal advice from its General Counsel. Communications *from* an attorney *to* a client are privileged when they are based on a client's disclosures to the attorney. *Brinton*, 636 F.2d at 603–04. The scope of the privilege thus ensures that the client's factual confidences will not be revealed, "either directly or by implication," through the revelation of attorney-generated communications. *Coastal States*, 617 F.2d at 862. TVA has established through its affidavits and index that the three documents sought are based on confidential information from TVA employees, received both to address the specifics of the Zurn negotiations and as general background over a period of time in the continuous attorney-client relationship. Again, the limited circulation of these memoranda among TVA staff members participating in the contract settlement process does not constitute a waiver of the corporate attorney-client privilege.

With regard to both of the claimed privileges, plaintiff has also argued that the documents may contain segregable, non-exempt material to which he is entitled. The Court is not persuaded, however, that such segregation is feasible given the nature of the memoranda in question. This is not a case where an agency is claiming a blanket exemption and advancing only conclusory justifications; rather, it is clear that TVA has already made a careful review of its files and disclosed many documents, in whole and in part, which are responsive to plaintiff's request. Further disclosure is therefore unwarranted. *See Mead Data*, 575 F.2d at 934–35.

### Conclusion

For all the reasons above, the court grants summary judgment in favor of defendant TVA and will enter an order in accordance with the foregoing of even date herewith.