Robert **KALMIN**, Plaintiff,

v.

**DEPARTMENT OF the NAVY,** Defendant.

**Civ. A. No. 84–1399.**

United States District Court, District of Columbia.

April 9, 1985.

Edna Earle Johnson, Arlington, Va., for plaintiff.

Wayne P. Williams, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This case follows the now familiar pattern of a FOIA/Privacy Act request for documents from a recalcitrant agency in pursuit of evidence to be used in connection with some other controversy between the same parties. As in all such cases the issues and the acrimony accompanying the underlying dispute permeate, and on occasion tend to overwhelm, the document request alone.

### I.

Plaintiff Robert D. Kalmin, formerly a grade 14 financial manager for the Navy's Trident Submarine Ship Acquisition Project, contests the Navy's refusal to release to him various "personal notes" made by certain of his supervisory co-workers, and some 27 documents concededly belonging to the Navy, all of which pertain to him and are presently in the possession of people attached to the Naval Sea Systems Command ("NAVSEA"), Kalmin's employer, and the Consolidated Civilian Personnel Office ("CCPO"), an agency providing personnel support services for NAVSEA. Both species of documents, he asserts, were utilized by his superiors in effecting his *"de facto* demotion"—by reassignment to a less responsible position which the Navy says he requested—and his unexplained ostracism from the "management process" in February, 1983.[1] The follow-

---

1. Kalmin, a 16-year career civil servant with a superior work history, took a three-month leave

ing December Kalmin filed a grievance; in February, 1984, he received the first negative performance evaluation of his career which, he believes, was retaliatorily motivated, and, moreover, was based upon the same "secret documents" made available to his rating superior. Appeals to more senior officials were unavailing, and, accordingly, Kalmin made an informal request for the "secret documents" from the Vice Commander of NAVSEA which was refused.

In February, 1984, Kalmin made the first of several formal FOIA/Privacy Act requests for, in effect, copies of all documents of which he was the subject to be found in both NAVSEA and CCPO. When duly processed to their administrative conclusions in late July, the requests had resulted in the release of some 770 pages of NAVSEA and CCPO material to Kalmin, excepting, however, he says, the "secret documents" he really wanted.

His original complaint pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g)(1)(B) in this Court to obtain the documents withheld from him was filed May 7, 1984, while his administrative requests were still being processed.[2] In November he was allowed to amend his complaint to elaborate upon the wrongs he believes were done him by the Navy in misusing the documents to derogate his work performance, and to seek damages pursuant to 5 U.S.C. §§ 552a(g)(3) and (4). His principal objective, however, remains

the acquisition of the documents before he proceeds for vindication in another forum.[3]

The matter is now before the Court on defendant's motion for summary judgment, plaintiff's cross-motion for partial summary judgment, and defendant's motion to dismiss.[4] For the reasons set forth below, the Court will grant defendant's motion for summary judgment and dismiss the complaint with prejudice.

## II.

The Navy has filed a *Vaughn* index (which Kalmin insists is insufficient) describing the 27 Navy documents withheld as, for the most part, one- or two-page "memoranda" recording encounters with or observations about Kalmin, all located within the confines of NAVSEA or CCPO, but randomly retained without attribution to Kalmin by name, or by any peculiar label, number, or symbol. (The index omits any reference to the "personal notes.") Moreover, it has filed the declarations of all of the authors/custodians of both the "personal notes" and the "agency records," describing the documents with which they were respectively involved and the circumstances of their making.

██ The declarations of Kalmin's coworkers who made "personal notes" about him state unequivocally that the notes were made for the sole purpose of refreshing the writer's memory; were either maintained at their homes, in miscellaneous pri-

---

of absence for a "stress-related ailment" in July, 1983, for which he consulted a psychologist. At the request of the Vice Commander of NAVSEA he was interviewed by a private psychiatrist in April, 1984, who found him "physically and emotionally capable of performing his duties and working harmoniously" with others.

2. Plaintiff maintains that the Navy's procrastination in providing him with what he has been given to date is further manifestation of its unexplained hostility towards him.

3. Plaintiff's administrative recourse is, presumably, to the Merit Systems Protection Board, *see* 5 U.S.C. § 1205, which, it should be noted, has both subpoena power, *Id.,* subpara. (b)(2)(A), and rules for discovery comparable to those of the Federal Rules of Civil Procedure. *See* 5 C.F.R. § 1201.72(c) (1985).

4. Also presently pending are plaintiff's motions for leave to amend his complaint once again and to compel defendant to amplify its *Vaughn* index of the documents withheld.

Further amendment of the complaint would not, however, expand plaintiff's right to relief in any respect, for he can presently maintain no cause of action here upon the facts alleged other than under the FOIA/PA, or against any prospective defendant other than the Navy. *See Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). And as to plaintiff's motion to compel compliance with this Court's order requiring the *Vaughn* index, it appears that defendant's 66-page index is wholly adequate insofar as the "agency records" for which it must alone account are concerned.

vate files at work, or in chronological logs or diaries; were never circulated; and were never under Navy control and could have been discarded at will in the writer's sole discretion. *See* Declarations of Matteo, ¶¶ 4–5; Salko, ¶ 3; Marczynski, ¶ 4; Yowell, ¶ 2; Logan, ¶ 2; Gros, ¶ 7. In the absence of evidence to the contrary, the Court concludes that the notes are the personal property of the authors which defendant is neither obliged to produce or to account for under FOIA or the Privacy Act.

The Privacy Act, in terms, applies only to "records" kept or "maintained by an agency," 5 U.S.C. § 552a(a)(4), and the published Guidelines to the Act indicate that by the limitation Congress intended the Act to reach only those "documents under the control of an agency," OMB Guidelines, 40 Fed.Reg. 28949 (July 9, 1979), or, in other words,

> to separate agency records from records which are maintained personally by employees of an agency which are not agency records, such as uncirculated personal notes, papers and records which are retained or discarded at the author's sole discretion and over which the agency exercises no control or dominion.

40 Fed.Reg. at 28952. *See Chapman v. NASA*, 682 F.2d 526, 529 (5th Cir.1982). Moreover, the fact that the agency exercises no control or dominion over such "personal" materials, places them beyond the scope of FOIA as well. *Cf. Forsham v. Harris*, 445 U.S. 169, 182, 100 S.Ct. 977, 985, 63 L.Ed.2d 293 (1980); *British Airports Authority v. CAB*, 531 F.Supp. 408, 416 (D.D.C.1981).

As to the "agency records" it has withheld, defendant argues, not having been maintained in the Navy's own system of records, they, too, are likewise not subject to production. Under the Privacy Act, records, to be producible, must be contained in a "system of records," 5 U.S.C. § 552a(d), which the Act defines as "a group of records under the control of any agency *from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.*" 5 U.S.C. § 552a(a)(5) (emphasis added). Since the documents at issue here were kept as, or in or among, private papers and files, without descriptive labels relating them to Kalmin at all (most of them without identifiers of any kind), *see* Declarations of Young, ¶ 2; Matteo, ¶ 4; Salko, ¶ 4; Marczynski, ¶¶ 3–6; Logan, ¶ 3; Rumpler, ¶ 4, defendant maintains they are not covered by the Privacy Act. *See, e.g., Smiertka v. Department of the Treasury*, 447 F.Supp. 221, 228, *remanded on other grounds*, 604 F.2d 698 (D.C.Cir.1979). *Accord, Grachow v. Customs Service*, 504 F.Supp. 632, 636 (D.D.C. 1980).[5]

To the extent the Navy documents might nevertheless be regarded as producible under FOIA, defendant contends that it is properly withholding them pursuant to Exemptions 5 and 6 of FOIA, 5 U.S.C. §§ 552(b)(5) and (6).[6] Exemption 5 protects from disclosure, *inter alia*, so-called "deliberative" documents, the purpose being to protect the advice, recommendations and opinions of those involved in an agency's decision-making process. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150,

---

**5.** Plaintiff contends that although these documents may presently be dispersed throughout the offices without identifiers, they have been allowed to remain so for the purpose of evading his request for them under the Privacy Act, which is, of course, impermissible. *See Waldorf v. Department of the Air Force*, 3 GDS ¶ 81,013 (S.D.Ill.1981); *Fiorella v. HEW*, 2 GDS ¶ 81,363 (W.D.Wash.1981). He fails to support the allegation with evidence of any kind, however, relying instead upon the inference that, as they obviously resulted in his *de facto* demotion, so also must they be considered a *de facto* "system

of records" relating to him, if only for that purpose.

**6.** Exemption 6 excuses the production of matter "which would constitute a clearly unwarranted invasion of personal privacy." It is, however, unnecessary to decide whether, as the Navy contends, anyone's privacy (or safety) would be jeopardized were the documents to be disclosed to Kalmin, which would entail an inquiry into the legitimacy of the Navy's concern with Kalmin's mental state and an issue very much still in dispute.

95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). In order for the exemption to apply, the agency must show that the documents are, indeed, part of a deliberative process leading to a final decision, *Vaughn v. Rosen (II)*, 523 F.2d 1136, 1146 (D.C.Cir.1975), and are "predecisional," *Jordan v. Department of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978) (*en banc*), i.e., are not, formally or informally, the final agency decision. *See Murphy v. TVA*, 571 F.Supp. 502, 505 (D.D.C. 1983). Defendant asserts (and plaintiff assuredly can be said to agree) that the documents at issue were generated in the course of the agency's deliberations on personnel matters within NAVSEA—specifically, the matter of Kalmin—and that they otherwise conform to the description of exempt documents, and its *Vaughn* index and supporting declarations appear to confirm it.

In summary, as the record here presently stands, the Navy has supported its motion for summary judgment with the declarations of the NAVSEA FOIA/PA Co-ordinator who directed its document search, and of each of the individuals who made the "personal notes" or have custody of the "agency records" making mention of Kalmin which have not been released to him. All of the documents, as the declarants describe them and the manner of their keeping, appear to be entitled to the immunity from production on the several grounds the Navy claims for them. And Kalmin has offered no contradictory evidence on those discrete issues.

Kalmin is acutely aware that the Navy, for reasons neither he nor the Navy has chosen to articulate, suspects that he is emotionally unstable. He vehemently denies it, and he has submitted a lengthy affidavit of his own, and the declaration of the psychologist and report of the psychiatrist who have, respectively, treated and examined him. In his own affidavit he relates the course of a Kafkaesque persecution to which he has been subjected by his NAVSEA superiors; the psychologist and psychiatrist attest to the absence of any mental pathology on his part which might suggest that his perception of it is hallucinatory.

## III.

 Although FOIA and Privacy Act actions may certainly, on occasion, substitute for civil discovery, they are unlike civil discovery proceedings in that the statutes accord no discretion to the trial court to consider and balance the competing interests favoring and opposing disclosure. *See Soucie v. David*, 448 F.2d 1067, 1076–77 (D.C.Cir.1971); *ACLU v. Department of Justice*, 548 F.Supp. 219, 222 (D.D.C.1982). The material sought is, as a simple matter of fact, either disclosable or it is not.

The only evidence relevant to a FOIA/PA case now before the Court is the Navy's, which demonstrates that what Kalmin wants the Navy need not produce—because it does not belong to the Navy; because it does not inhabit a "system of records" relating uniquely to him to which he would be entitled under the Privacy Act; and because it is comprised of pre-decisional work which is protected by Exemption 5 of FOIA.

Kalmin's position is, in essence, that the Navy's evidence cannot be taken as undisputed—or, at least, is called into question—by his own uncontroverted showing of his superiors' unexplained malevolence towards him which taints any evidence the Navy has offered to prolong its concealment from him. But the possibility that certain evidence may be suspect is not the equivalent of affirmative proof that it is wrong, *see Cruzan v. New York Central & Hudson River R.R.*, 227 Mass. 594, 116 N.E. 879 (1917), and plaintiff has offered no evidence at all, other than his own suspicions that the documents he seeks are not what, or not to be found where, the Navy's declarants say they are. Defendant has, therefore, made the required evidentiary proffer in support of its motion for summary judgment, without encountering a contradictory proffer by plaintiff of *admissible* evidence from which it could be found that any facts material to the case as a FOIA/Privacy Act action, as distinguished from an employment grievance, remain in dispute. *See Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181 (D.C.Cir.1985).

ORDERED, that defendant's motion for summary judgment is granted, and the complaint is dismissed with prejudice.