Matthew **FESHBACH**, et al., Plaintiffs,

v.

**SECURITIES AND EXCHANGE COMMISSION, Defendant.**

No. C–95–4465 SI.

United States District Court, N.D. California.

April 23, 1997.

Kendrick L. Moxon, Moxon & Bartilson, Glendale, CA, for Plaintiffs.

Kathleen Cody, Securities and Exchange Commission, Washington, DC, for Defendant.

## ORDER PARTIALLY GRANTING AND PARTIALLY DENYING CROSS–MOTIONS FOR SUMMARY JUDGMENT

ILLSTON, District Judge.

On April 11, 1997, the Court heard argument on plaintiffs' and defendant's cross-motions for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS in part and DENIES in part plaintiffs' and defendant's motions for summary judgment.

### BACKGROUND

On December 13, 1995, plaintiffs Matthew Feshbach, Joseph Feshbach, and Kurt Feshbach ("the Feshbachs") filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a) *et seq.*, seeking to enjoin defendant Securities and Exchange Commission ("Commission") from withholding agency records related to the Commission's investigation of the Feshbachs and their business, Stockbridge Partners, Inc. ("Stockbridge").

In late 1989, the Commission's San Francisco Branch Office conducted an examination of Stockbridge, which was at the time a broker-dealer registered with the Commission, and issued an examination report on January 19, 1990. Decl. of Richard A. Castro ("Castro Decl.") at ¶ 9. From June 28, 1990 to July 13, 1990, the National Association of Securities Dealers, Inc. ("NASD") conducted an examination of Stockbridge, which was then a member of the NASD. *Id.* at ¶ 10. The NASD issued an examination report on August 24, 1990 and issued two letters of caution to Stockbridge for, among other actions, failing to maintain the minimum net capital of $25,000, having inadequate supervisory procedures, and conduct-

ing a securities business for clients residing in states in which the company was not registered. *Id.* The Commission's San Francisco Branch Office conducted a second examination of Stockbridge, beginning July 12, 1990, to determine whether Stockbridge was trading securities on material, non-public information in violation of federal securities laws. *Id.* at ¶ 11. Based on information obtained from its Summer 1990 examination of Stockbridge, the Commission subsequently initiated an informal investigation (i.e., "Matter Under Inquiry") and formal investigation of Stockbridge.[1] *See In the Matter of Feshbach Brothers,* File No, LA–619, and *In the Matter of Stockbridge Partners, Inc.,* File No. HO–2473.

In November 1992 and August 1994, the Feshbachs submitted FOIA requests to the Commission, requesting the production of any and all records, files, notes, or other information in the custody or possession of the Commission that concerned or related to the Feshbachs. In letters dated February 15, 1995, May 9, 1995, and August 2, 1995, the Commission granted the Feshbachs access to a number of documents pursuant to their FOIA requests and denied access to other documents which it claimed were exempt from disclosure under the statute. The Feshbachs subsequently filed an administrative appeal and on December 13, 1995 filed this action, seeking disclosure of the documents claimed to be exempt by the Commission.

■ On February 28, 1996, the Feshbachs filed a motion to compel the Commission to produce a *Vaughn* index,[2] which the Court granted on April 3, 1996. The SEC produced the index to plaintiffs on May 3, 1996. On June 18, 1996, the Feshbachs filed a motion for production of a revised *Vaughn* index, which the Court granted on August 19, 1996. The Commission produced its revised *Vaughn* index thirty days later.

The Commission and Feshbachs now move separately for summary judgment. At issue is the applicability of a number of FOIA exemptions to the facts of the instant case.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party will have the burden of proof on an issue at trial, the moving party must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. In contrast, a moving party who will not have the burden of proof on an issue at trial can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.*

If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, " '*specific facts* showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis added).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n,* 809 F.2d at 630–31. The

---

1. Counsel for the Commission stated at oral argument that the Commission initiated its informal investigation in October 1990. Counsel stated that she was unaware of the date the Commission initiated its formal investigation.

2. A *Vaughn* index is an affidavit or set of affidavits that describes the withheld information and sets forth the justification for nondisclosure in reasonably specific detail. *Bonner v. U.S. Dept. of State,* 928 F.2d 1148, 1149 n. 2 (D.C.Cir.1991).

evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2nd Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay Statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980).

 Summary judgment is proper in a FOIA case if the defendant establishes that it has fully discharged its obligations under FOIA. *Hayden v. National Sec. Agency/Central Sec. Service,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). The agency has the burden of demonstrating that the material is exempt from disclosure. *Alyeska Pipeline Service Co. v. U.S.E.P.A.,* 856 F.2d 309, 311 (D.C.Cir.1988). The agency may meet this burden by submitting a declaration that identifies the documents at issue and explains why the documents fall into the exemption categories. *King v. U.S. Dept. of Justice,* 830 F.2d 210 (D.C.Cir.1987). If the declaration fairly describes the contents of the material withheld, adequately states the grounds for non-disclosure, and if the grounds are reasonable and consistent with applicable law, the district court should uphold the agency's position as long as there is no reason to question the good faith of the agency. *Barney v. I.R.S.,* 618 F.2d 1268, 1272 (8th Cir.1980); *Lewis v. I.R.S.,* 823 F.2d 375, 379 (9th Cir.1987).

## DISCUSSION

 The Commission contends that it is authorized to withhold documents related to its investigation of the Feshbach brothers and Stockbridge pursuant to the following FOIA exemptions:

* Exemption 2 (internal personnel rules and practices of an agency),

* Exemption 4 (trade secrets; commercial or financial information that is privileged or confidential),

* Exemption 5 (attorney work product privilege, attorney-client privilege, and deliberative process privilege),

* Exemption 7 (law enforcement records or information), and

* Exemption 8 (reports of an agency responsible for regulating or supervising financial institutions).

The Commission has moved for summary judgment with respect to documents withheld pursuant to each of these five exemptions. The Feshbachs have moved for summary judgment with respect to documents withheld pursuant to Exemptions 2, 5, 7, and 8 and have requested in the alternative that further discovery be permitted pursuant to Federal Rule of Civil Procedure 56(f).[3] The Feshbachs do not oppose summary judgment with respect to documents withheld pursuant to Exemption 4. As such, summary judgment will be granted in favor of the Commission as to documents withheld pursuant to Exemption 4. The remaining exemptions will be discussed in turn.[4]

## I. Exemption 8

 Under Exemption 8, matters may be withheld where they are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the

---

3. In their opposition to defendant's motion for summary judgment, the Feshbachs request additional discovery of Mess. Nathan and Castro, the declarants submitting affidavits in support of defendant's motion for summary judgment. The Court denies the plaintiffs' Rule 56(f) motion. The Feshbachs have not submitted a declaration in support of their Rule 56(f) request setting forth (1) facts establishing a likelihood that controverting evidence may exist as to a material fact, (2) the specific reasons why such evidence cannot be presented at the present time, or (3) the steps or procedures which the Feshbachs intent to utilize to obtain such evidence. *See* Fed.R.Civ.P. 56(f);

Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial,* § 14:114, at 14–26 (1997). In particular, the Feshbachs fail to explain why Messrs. Nathan and Castro, whose involvement in this matter were disclosed to the Feshbachs seven months earlier, have not yet been deposed. *See* Second Suppl.Decl. of John H. Heinz, filed on September 19, 1996, at ¶ 7.

4. The Court will address the FOIA exemption categories in the order addressed by the parties in memoranda.

regulation or supervision of financial institutions". 5 U.S.C. § 552(b)(8). This exemption is broad and all-inclusive and "provides absolute protection regardless of the circumstances underlying the regulatory agency's receipt or preparation of examination, operating or condition reports." *Gregory v. Federal Deposit Ins. Corp.*, 631 F.2d 896, 898 (D.C.Cir.1980).

The parties dispute whether Stockbridge, a broker-dealer, is a "financial institution" within the meaning of Exemption 8. The Feshbachs rely on *M.A. Schapiro & Co. v. S.E.C.*, 339 F.Supp. 467 (D.D.C.1972), in which the district court adopted a narrow definition of "financial institutions" and held that documents pertaining to off-board trading problems "arguably [did] not concern financial institutions" for purposes of Exemption 8. *Id.* at 470. However, in *Mermelstein v. S.E.C.*, 629 F.Supp. 672 (D.D.C.1986), the same district court noted that *Schapiro* was no longer good law. *Mermelstein*, 629 F.Supp. at 674 ("The Court concludes that Congress has never acceded to the *Schapiro* court's restrictive census of 'financial institutions' for purposes of FOIA's Exemption 8....").

In particular, courts have considered the legislative history of the Sunshine Act, a statute *in para materia* with the FOIA, to determine the meaning of "financial institutions".[5] For purposes of the Sunshine Act, "financial institutions" is defined as follows in the legislative history:

> The term "financial institutions" is intended to include banks, savings and loan associations, credit unions, *brokers and dealers in securities or commodities,* exchanges dealing in securities or commodities, such as the New York Stock Exchange, investment companies, investment advisors, self-regulatory organizations subject to 15 U.S.C. § 78(s), and institutional managers as defined in 15 U.S.C. § 78m(f).

S.Rep. No. 354, 94th Cong., 1st Sess. 24 (1975) (emphasis added). Because FOIA and the Sunshine Act are statutes *in para materia,* courts have referred to the legislative

history of the Sunshine Act in interpreting the meaning of "financial institutions" for purposes of FOIA. *See Mermelstein,* 629 F.Supp. at 674–75 (security exchange is "financial institution" for purposes of the Sunshine Act and FOIA Exemption 8); *Berliner Zisser Walter & Gallegos, P.C. v. S.E.C.,* 962 F.Supp. 1348, 1351–52 (D.Colo.1997) (investment advisor is "financial institution" for purposes of FOIA Exemption 8); *Parsons v. S.E.C.,* No. C–2–96–001 (S.D.Ohio Sept.6, 1996) (report generated by NASD for the SEC relating to an examination of Parson's Securities, Inc. was properly withheld under Exemption 8).

■ Following the logic of these cases, the Court holds that the term "financial institutions" encompasses brokers and dealers of securities or commodities as well as self-regulatory organizations, such as the NASD. The Commission is exempt from disclosing reports related to the examinations and investigations of the Feshbachs by the Commission and the NASD. The Commission's motion for summary judgment as regards documents withheld pursuant to Exemption 8 is therefore granted.

## II. Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This language has been interpreted to cover documents normally privileged when civil discovery is at issue. *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The Commission has asserted three grounds for withholding documents under Exemption 5: attorney work product privilege, attorney-client privilege, and deliberative process privilege.

### 1. *Attorney Work–Product Privilege*

The work-product privilege protects against disclosure "the mental impressions,

5. Neither the text of FOIA nor the text of the Sunshine Act defines "financial institutions". The legislative history of FOIA is also silent with respect to the meaning of "financial institutions."

conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" as well as documents "prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). The Commission has withheld the following three general categories of documents under the attorney work product privilege: (1) notes and staff research documents prepared by Commission attorneys and staff working at their direction during the course of the Commission's examinations and investigations of Stockbridge, (2) internal memoranda from the staff to the Commission, and (3) internal memoranda among staff members. Examples of withheld documents [6] include:

* memorandum from Commission attorney to file discussing the significance of the conduct of a particular witness to the investigation; Revised *Vaughn* Index, Accession No. 266–94–45, Box 29, Doc. 1;

* memorandum from Commission's San Francisco Branch Office to the Commission requesting expedited consideration of staff recommendations about investigation; *id.*, Accession No. 266–94–45, Box 49, Doc. 7; and

* memorandum from Commission attorney to senior regulatory Commission staff member discussing Commission examinations of broker-dealers connected to the investigation; *id.*, Accession No. 266–94–53, Box 48, Doc. 5.

 The Feshbachs contend that the documents were not compiled in anticipation of litigation and are therefore not covered by the attorney work product privilege. The privilege extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated. *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1208 (D.C.Cir.1992). A law enforcement agency may meet this standard by demonstrating that one of its attorneys prepared a document in the course of an investigation that was undertaken with litigation in mind. *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1202 (D.C.Cir.1991). Such an investigation would have to be based upon a suspicion of specific wrongdoing and represent an effort to obtain evidence and to build a case against the suspected wrongdoer. *Id.*

 At issue is the applicability of the exemption to documents related to the Commission's 1989 and 1990 examination of Stockbridge, the Feshbach's broker-dealer business.[7] *See* Castro Decl. at ¶ 12. In late 1989, the Commission's San Francisco Branch Office conducted an examination of Stockbridge, which was at the time a broker-dealer registered with the Commission. *Id.* at ¶ 9. The Commission's 1990 examination of Stockbridge was conducted because there was a question as to whether Stockbridge was trading securities on material, non-public information in violation of federal securities laws. *Id.* at ¶ 11. The Feshbachs have specifically objected to the withholding of documents related to the Commission's 1990 examination of Stockbridge. The Feshbachs cite the following deposition testimony of Gladwyn Goins, who supervised the Summer 1990 examination:

> Q: You certainly didn't tell [your supervisor] that you were going in and inves-

---

6. In light of the large number of documents at issue, the parties have adopted representative sampling as the procedure to test the Commission's FOIA exemption claims. *See Bonner v. State Dept.*, 928 F.2d 1148, 1151 (D.C.Cir.1991).

7. The Commission conducts examinations and investigations of regulated entities (e.g., broker-dealers). Examinations may be routine (i.e., for oversight purposes or as part of a schedule) or for cause. Dep. of Gladwyn Goins ("Goins Dep.") at 16. The Commission's ability to examine registered broker-dealers is provided for under Section 17(b) of the Securities and Exchange Act of 1934. Castro Decl. at ¶ 4; 15 U.S.C. § 78q(b). A broker-dealer examination is typically performed by a team of accountants and securities compliance examiners who conduct an

on-site review of the broker-dealer's records and trading operations. Castro Decl. at ¶ 6. At the conclusion of a broker-dealer examination, the staff typically generates an examination report that sets forth the staff's findings and analysis and may recommend corrective action. *Id.* at ¶ 7. The Commission may also conduct an investigation based on its findings from an examination. There are two types of investigations. Goins Dep. at 26. There is a Matter Under Inquiry ("MUI"), which is conducted by Commission staff. *Id.* If the staff believes there may have been violations of federal securities laws, the staff seeks authority from the Commission to conduct an investigation pursuant to a formal order of investigation. *Id.*

tigating the Feshbach's because you believed there was a violation of law, right?

A: Of course not. It wasn't an investigation. It was an examination.

Q: Were you intending to file some litigation against the Feshbach's when you went in there?

A: No.

Goins Dep. at 43.

Q: By the way, in the summer of 1990, you were anticipating suing the Feshbach's, weren't you?

A: No.

Goins Dep. at 99. The Feshbachs assert that there is a genuine issue of material fact as to whether the documents were compiled in anticipation of litigation.

In *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623–24 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976), the Fifth Circuit considered whether Final Investigative Reports prepared by staff members of the National Labor Relations Board's Tenth Regional Office needed to be disclosed under FOIA. The Court held as follows:

> To say that the investigation reports in this case were prepared in anticipation of litigation is not without difficulties, because they were written at the very outset of the Regional Office's involvement in the case, before there had been any authoritative determination that the charges had substance. But there are weighty considerations on the other side. Where unfair labor practices are concerned, the Regional Office's basic function is to litigate .... [W]ritten evaluations of the evidence necessarily were founded on the assumption that any charge *might* become enmeshed in litigation. Insofar as the privilege is meant to promote candid expressions of an attorney's theories and perspectives, it cannot properly be made to turn on whether litigation actually ensued. Since "the prospect of litigation [was] identifiable because of specific claims that [had] already arisen," the reports are subject to a prima facie claim of privilege.

*Id.* at 623–24 (emphasis in original) In the instant case, the evidence is undisputed that the Commission investigates potential violations of the federal securities laws with a view to both civil and criminal enforcement and that the Summer 1990 examination of Stockbridge was "for cause" and undertaken to determine "whether or not there were sufficient facts ... to either show there was or was not a violation." Nathan Decl. at ¶ 3; Goins Dep. at 16, 33. Furthermore, the Commission initiated its examination after the NASD had reported to the Commission that the Feshbachs had a large number of short positions in a large number of stocks, had close relationships with company officials, and may have been in possession of material, non-public information. Goins Dep. at 35. It thus appears that the Summer 1990 examination was based upon a suspicion of specific wrongdoing and represented an effort to obtain evidence and to build a case against the suspected wrongdoer. *See Safe-Card*, 926 F.2d at 1202. As such, the work product privilege is applicable.

Assuming the attorney work product privilege to be applicable, the Feshbachs claim that the Commission failed to segregate factual material from deliberative material and to disclose unprotected factual material to the plaintiffs. The Feshbachs cite *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1138 (4th Cir.1977), and *Robbins Tire & Rubber Co. v. N.L.R.B.*, 563 F.2d 724, 735–37 (5th Cir.1977), *rev'd on other ground*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), which held that agencies are required to sever factual material from deliberative material and to disclose material identified as factual. *See also Fine v. U.S. Dept. of Energy, Office of Inspector General*, 830 F.Supp. 570, 574–76 (D.N.M.1993).

The Court adopts the approach of more recent cases such as *Norwood v. F.A.A.*, 993 F.2d 570, 576 (6th Cir.1993), and *Martin v. Office of Special Counsel, Merit Systems Protection Bd.*, 819 F.2d 1181, 1185–86 (D.C.Cir.1987), which have held that there is no obligation to segregate factual from deliberative material where documents are withheld pursuant to the attorney work product privilege. The Court finds the reasoning set forth in these cases to be more persuasive and in line with Supreme Court decisions

decided after *Deering* and *Robbins.* The Feshbachs emphasize that John Heinz, who reviewed the documents requested under FOIA, did not read the documents to determine whether factual materials were contained within them after he identified the documents. *See* Dep. of John Heinz ("Heinz Dep.") at 182–83, 211. However, he was under no obligation to disclose factual materials claimed under the attorney work product privilege.[8]

In sum, the Court finds that summary judgment is warranted in favor of the Commission with respect to documents withheld pursuant to the attorney work product privilege.[9]

### 2. *Attorney–Client Privilege*

 The attorney-client privilege applies only when information is the product of an attorney-client relationship and is maintained as confidential between attorney and client. *Brinton v. Dept. of State,* 636 F.2d 600, 603 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). The privilege applies primarily to facts divulged by the client to the attorney and includes opinions from the attorney to the client based on those facts. *Id.* at 605. Ultimately, the attorney-client privilege helps improve the qualify of agency decisionmaking by safeguarding the free flow of information that is a necessary predicate for sound advice. *Murphy v. Tennessee Valley Authority,* 571 F.Supp. 502, 506 (D.D.C.1983).

 The Commission has withheld internal memoranda from Commission staff to the Commission under the attorney-client privilege, including:

8. The Feshbachs assert that under *Powell v. U.S. Dept. of Justice,* 584 F.Supp. 1508 (N.D.Cal. 1984), the Commission is required to release verbatim witness statements. *See id.* at 1520 ("assuming that the work-product privilege generally applies to the document, only verbatim witness statements and other objective reporting of facts need be released."). Assuming *Powell* to apply, the Commission has already provided to the Feshbachs transcripts of witness statements. *See* Heinz Dep. at 131.

9. All of the documents withheld pursuant to the work product privilege are exempt from disclosure with the exception of HHS documents, re-

* memorandum from the Commission's San Francisco Branch Office to the Commission making recommendations with respect to the investigation; *see, e.g.,* Revised *Vaughn* Index, Accession No. 266–94–45, Box 35, Doc. 8; and

* memorandum from San Francisco Branch Office to Commission summarizing status of investigation and making recommendations regarding its future course; *id.,* Accession No. 266–94–53, Box 48, Doc. 15.

The Feshbachs have offered no arguments in opposition. The Court finds that based on the representative sample provided by the Commission, summary judgment is warranted in favor of the Commission as regards documents claimed under the attorney-client privilege.

### 3. *Deliberative Process Privilege*

 To qualify for Exemption 5 under the "deliberative process" privilege, a document must be both (1) "predecisional" or "antecedent to the adoption of agency policy" and (2) "deliberative" or "actually ... related to the process by which policies are formulated." *Nat'l Wildlife Federation v. U.S. Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir.1988) (citations omitted). The underlying purpose of this privilege is to " 'protect [ ] the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendation's, and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Id.* (citations omitted) "Factual material that does not reveal the deliberative process is not protected by this exemption." *Paisley v. C.I.A.,* 712 F.2d 686, 698 (D.C.Cir.1983).

ferred to by the Feshbachs in their opposition to defendant's motion for summary judgment. *See* Pls.' Opp'n to Summ. J. at 10. The Commission representative in charge of reviewing these documents admitted during his deposition that he was unaware if the HHS Inspector General or individuals from the HHS Inspector General's office were attorneys. *See* Heinz Dep. at 125–27. The Commission has not met its burden of demonstrating that these documents constitute attorney work product. As such, the Court grants summary judgment in favor of the Feshbachs with respect to these HHS documents.

■ Among the documents which the Commission claims are protected from disclosure by the deliberative process privilege are the following:

* memorandum from Commission attorneys to their supervisors discussing strategy for witness interviews; Revised *Vaughn* Index, Accession No. 266–94–45, Box 47, Doc. 3; and

* memorandum among Commission attorneys proposing testimony schedule; *id.,* Accession No. 266–94–45, Box 49, Doc. 6.

■ The Feshbachs contend that the Commission has failed to segregate factual material from deliberative material. In contrast with the attorney work product privilege, the deliberative process privilege does not apply to factual information that may be reasonably segregated from deliberative material. *See Bay Area Lawyers Alliance for Nuclear Arms Control v. Dept. of State,* 818 F.Supp. 1291, 1299 (N.D.Cal.1992). The Feshbachs cite the deposition testimony of John Heinz, Senior Counsel at the Commission's Office of General Counsel, who reviewed the requested documents for applicable exemptions. In one exchange between Heinz and the attorney for the Feshbachs, Heinz admitted that he had not read all of the withheld documents:

Q: This [document] then was a summary of factual statements by witnesses?

A: It could have been a summary of factual or it could have been a summary of opinion. It should have been a summary of just about anything. *I didn't read the notes.*

Heinz Dep. at 211 (emphasis added) *See also id.* at 180 ("I didn't read [the statements in the memorandum withheld pursuant to the deliberative process privilege]."). In light of Heinz's sworn testimony that he did not read the documents in question, the Court orders the Commission to review the documents withheld pursuant to the deliberative process privilege that are not otherwise exempt from disclosure and to disclose segregable portions

or provide explanations why such factual material may be withheld.[10] *See American Petroleum Institute v. U.S. E.P.A.,* 846 F.Supp. 83, 90 (D.D.C.1994) (remanding to EPA to segregate factual from deliberative materials on parties' cross motions for summary judgment).

## III. Exemption 7

The Commission has withheld documents pursuant to FOIA Exemptions 7(C) and 7(E) These exemptions authorize the non-disclosure of:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, [or] ... (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law....

5 U.S.C. § 552(b)(7).

### 1. *Exemption 7(C)*

■ The threshhold issue in any Exemption 7 claim is whether the agency involved may properly be classified as a "law enforcement" agency. *Church of Scientology v. U.S. Dept. of the Army,* 611 F.2d 738, 748 (9th Cir.1979). An agency which has a clear law enforcement mandate need only establish a "rational nexus" between enforcement of a federal law and the document for which exemption is claimed. *Id.* In contrast, an agency with a "mixed" function, encompassing both law enforcement and "administrative" functions, must demonstrate that it has a purpose falling within its sphere of enforcement authority in compiling the particular document. *Id.* In addition, the Court must balance the privacy interests involved against the public interest in disclosure of documents

---

10. Most of these documents have been withheld pursuant to both the deliberative process privilege *and* attorney work product privilege and are therefore exempt from disclosure. From the Court's review of the Revised and Supplemental *Vaughn* indices, it appears that fewer than twenty documents have been withheld pursuant to the deliberative process privilege which are not otherwise exempt from disclosure.

withheld pursuant to Exemption 7(C). *Safe-Card Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C.Cir.1991).

▮ The Commission has redacted the names, social security numbers, home telephone numbers, bank account balances, and other identifying personal information of private individuals against whom the Commission did not take action. The Commission resists disclosure because to publicly connect individuals to a law enforcement investigation would likely cause the targeted individuals embarrassment and stigma. *See* Nathan Decl. at ¶ 10. The Commission has provided reasonable and satisfactory grounds for non-disclosure. " 'There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm.' " *SafeCard*, 926 F.2d at 1205. Moreover, the Feshbachs have not articulated a countervailing public interest in disclosure that would outweigh the serious privacy concerns at issue. *See* Pls.' Opp'n to Summ. J. at 19–20. As such, the Court grants summary judgment in favor of the Commission with respect to documents withheld under Exemption 7(C).

### 2. *Exemption 7(E)*

▮ To qualify for Exemption 7(E), the non-disclosing agency must demonstrate that the records, if disclosed, would risk circumvention of the law. *Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1064 (3rd Cir. 1995).[11] The Commission has withheld the following documents pursuant to Exemption 7(E):

* SEC examination reports; *see, e.g.,* Supp. *Vaughn* Index, p. 1, Doc. 2;

* printouts from the SEC's internal computerized database known as the "Examination Activity Tracking System" or "EATS"; *see, e.g., id.,* p. 1, Doc. 1;
* printouts from the SEC internal computerized database known as the "Name Relationship Search Index" or "NRSI"; *see, e.g., id.,* p. 6, Doc. 20; and
* internalized SEC checklists and check sheets containing the selective criteria used by SEC staff to determine what type of review to give various documents filed with the Commission;[12] *see, e.g., id.,* p. 5, Doc. 16.

The Commission contends that disclosure of the NRSI printout would reveal internal procedures, techniques, and strategies and allow broker-dealers to frustrate or deceive the staff in its efforts to enforce compliance with federal security laws. Def.'s Mem. in Supp. for Summ. J. ("Def.'s Mem.") at 19; Nathan Decl. at ¶ 11. In particular, the Commission asserts that the release of Commission checklists could assist registrants in developing methods to escape SEC review of their documents. Def.'s Mem. at 19–20.

▮ The Commission bears the burden of demonstrating that the material is exempt from disclosure. *Alyeska*, 856 F.2d at 311. It cannot discharge its burden with unsupported assertions in its moving papers or the conclusory statements of a single declarant regarding only one of many categories of documents withheld pursuant to Exemption 7(E). *See* Nathan Decl. at ¶ 11 ("The Commission has withheld NRSI printouts generated during the investigations.... pursuant to Exemption 7(E) because they reveal Commission law enforcement procedures, techniques, and strategies, the disclosure of which could be used to circumvent federal

---

11. The Commission contends that law enforcement *techniques and procedures* are evaluated differently from *guidelines* for law enforcement investigations, and that law enforcement techniques and procedures may be withheld without showing that harm or a risk of circumvention of the law would result from disclosure. Def.'s Mem. in Supp. of Mot. for Summ. J. at 19 n. 7. The Third Circuit in *Davin v. U.S. Dept. of Justice,* 60 F.3d 1043, 1064 (3rd Cir.1995), held to the contrary. *See id.* at 1064 ("The FBI has withheld documents and portions of documents under Exemption 7(E), which allows an agency

to withhold records and information for law enforcement purposes that 'would *disclose techniques and procedures* for law enforcement investigations or prosecutions.' Exemption 7(E) applies to *law enforcement records,* which if disclosed, would risk circumvention of the law.") (emphasis added).

12. While the Commission has withheld checklists pursuant to Exemption 7(E), it has withheld staff annotations on these checklists under Exemption 5.

securities laws.") In order to justify non-disclosure, the Commission must provide non-conclusory reasons why disclosure of each category of withheld documents would risk circumvention of the law. *See, e.g., PHE, Inc. v. Dept. of Justice,* 983 F.2d 248, 252 (D.C.Cir.1993) ("Had the [agency] submitted a more specific affidavit ... providing reasons why releasing each withheld section would create a risk of circumvention of the law, or had the [agency] clearly indicated why disclosable material could not be segregated from exempt material, it might have established a legitimate basis for its decision."); *Davin,* 60 F.3d at 1064 ("The speculation provided in the government's brief of political groups' increased ability to detect informants within their ranks is not supported by evidence."). The Court therefore denies the Commission's motion for summary judgment with respect to documents withheld pursuant to Exemption 7(E).

As regards the Feshbachs' motion for summary judgment, since the Feshbachs would not have the burden of proof at trial, they need only point to the insufficiency of the Commission's evidence, thereby shifting to the Commission the burden of raising genuine issues of fact by substantial evidence. The Commission has failed to present substantial evidence in opposition to the Feshbachs' motion for summary judgment. As such, the Court grants summary judgment in favor of the Feshbachs as regards documents withheld pursuant to Exemption 7(E).

**IV. Exemption 2**

■ Under FOIA, matters "related solely to the internal personnel rules and practices of an agency" are exempt from disclosure. 5 U.S .C. § 552(b)(2). Exemption 2 applies to material "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1073 (D.C.Cir.1981) (en banc). Material which is used for predominantly internal purposes may be withheld if the agency demonstrates that either (1) disclosure may risk circumvention of agency regulation ("high 2 exemption") or (2) the material related to trivial administrative matters of no genuine public interest ("low 2 exemption"). *Schiller v. N.L.R.B.,* 964 F.2d 1205, 1207 (D.C.Cir.1992).

■ The Commission has withheld one document under the "low 2" exemption, an internal Commission form used to track incoming correspondence to the Chairman's Office.[13] *See* Revised *Vaughn* Index, Accession No. 266–94–67, Box 4, Doc. 45. The form falls squarely within the "low 2" exemption, as it is used for predominantly internal purposes and is related to trivial administrative matters of no genuine public interest. The Feshbachs submit no evidence to the contrary.

■ The Commission has withheld the bulk of its Exemption 2 documents on "high 2" exemption grounds. The withheld Commission forms include:

* Forms 19A and 19C, which are Case Activity Tracking System Forms used by senior SEC attorneys to monitor and direct the course of investigations; *see, e.g.,* Revised *Vaughn* Index, Accession No. 266–94–43, Box 8, Doc. 7; *id.,* Accession No. 266–94–53, Box 50, Doc. 3.

* Form 1569, which tracks the status of informal SEC inquiries called "Matters Under Inquiry" or "MUI's" and has the same purpose as Forms 19A and 19C; *see, e.g., id.,* Accession No. 266–94–53, Box 49, Doc. 10;

* Form 470 ("SEC Record Search Memoranda"), which is used by SEC staff reviewing applications filed with the Commission to obtain comments on their recommendations from other SEC offices; *see, e.g.,* Supp. *Vaughn* Index, p. 6, Doc. 18;

* Form 140 ("Record of Action, Notes to the File"), which provides the status of applications filed with the Commission and is used by SEC staff to monitor its review of pending applications; *see, e.g., id.,* p. 7, Doc. 22; and

* Request for Expedited Commission Action Form, which is used by SEC staff to

---

13. The *Vaughn* index entry indicates that the underlying correspondence is not attached to the form and has already been released to the Feshbachs.

seek expedited Commission consideration of staff recommendations; *see, e.g.,* Revised *Vaughn* Index, Accession No. 266–94–53, Box 48, Doc. 29.

The descriptions of the withheld forms make clear that the documents are used for predominantly internal purposes. However, the Commission has not presented specific evidence that disclosure would risk circumvention of federal securities laws. The declaration submitted by the Commission makes a number of conclusory and unsubstantiated statements in support of non-disclosure. *See* Decl. of Daniel A. Nathan ("Nathan Decl.") at ¶ 12 ("[the forms] contain summaries of legal theories regarding possible violations of law, track and update developments in investigations, and assist staff members in evaluating and assessing the inquiry. Disclosure of these documents could risk circumvention of the federal securities laws."). In order to justify non-disclosure, the Commission must provide non-conclusory reasons why disclosure would risk circumvention of the law. The Commission has not discharged its burden. As such, the Court grants the Feshbachs' motion for summary judgment with respect to documents withheld on "high 2" exemption grounds.[14]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the Commission's motion for summary judgment and DENIES the Feshbach's motion for summary judgment with respect to documents withheld pursuant to FOIA Exemptions 2 ("low 2" exemption), 4, 5 (attorney work product[15] and attorney—client privileges) 7(C) and 8. The Commission need not produce documents withheld pursuant to these exemptions.

The Court GRANTS the Feshbach's motion for summary judgment and DENIES the Commission's motion for summary judgment with respect to documents withheld pursuant to FOIA Exemptions 2 ("high 2" exemption), 5 (deliberative process privilege) and 7(E). The Commission is ORDERED to review documents withheld pursuant to Exemption 5 (deliberative process privilege) that are not otherwise exempt from disclosure. The Commission shall disclose segregable portions of these documents or provide a detailed explanations why such factual material may continue to be withheld by *May 23, 1997.* The Commission shall also review documents withheld pursuant to FOIA Exemptions 2 ("high 2" exemption) and 7(E), redact any notations on these documents that are exempt from disclosure, and to disclose the redacted documents by *May 23, 1997.*

IT IS SO ORDERED.

**14.** The Commission has asserted multiple exemptions for all of the documents withheld on "high 2" grounds. Exemption 2 has been asserted to protect the forms while Exemption 5 has been asserted to protect the Commission staff's predecisional recommendations and/or work product statements on the forms. Def.'s Mem. in Supp. of Mot. for Summ. J. at 22 n. 11. The Court orders only disclosure of the forms. The Commission may redact the recommendations and/or work product of its staff, except to the extent that the Court has independently ordered disclosure of such materials.

**15.** All of the documents withheld pursuant to the attorney work product privilege are exempt with the exception of HHS documents. *See, supra,* n. 9. The Commission is ordered to disclose these documents or provide a detailed explanation why these documents are exempt from disclosure by *May 23, 1997.*