**ALYESKA PIPELINE SERVICE COMPANY, Appellant**

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.**

No. 87–5381.

United States Court of Appeals, District of Columbia Circuit.

Argued May 27, 1988.

Decided Sept. 13, 1988.

William H. Allen, with whom Mark H. Lynch and Quinn O'Connell, Washington, D.C., were on the brief for appellant.

Marina Utgoff Braswell, Atty. Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on brief for appellees. Joseph E. diGenova, U.S. Atty., Washington, D.C., also entered an appearance for appellees.

Before ROBINSON, RUTH BADER GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Alyeska Pipeline Service Company seeks release under the Freedom of Information

Act (FOIA)[1] of copies of certain of its own corporate records that were provided to the Environmental Protection Agency (EPA) by a third party. EPA has refused to surrender the documents, invoking FOIA Exemption 7(A), which authorizes the withholding of information compiled for law enforcement purposes when the production thereof "could reasonably be expected to interfere with enforcement proceedings."[2] Finding that the documents sought fall within that exemption, and that the District Court's grant of summary judgment in favor of the agency was appropriate, we affirm.

## I

Alyeska operates the Trans–Alaska Pipeline System through which unrefined liquid hydrocarbons produced on Alaska's North Slope are transported to Valdez, Alaska, for loading onto ships. At the Valdez terminal, Alyeska maintains a ballast water treatment (BWT) facility where water is removed from the holds of tankers awaiting loading and is then treated to extract oil, grease, and aromatics before being discharged into Valdez Bay.

Alyeska's BWT facility is the focus of an ongoing EPA investigation into possible violations of a number of environmental laws.[3] In January, 1985, EPA propounded, pursuant to its statutory authority, interrogatories to Alyeska concerning operation of the facility. In late March, EPA received from Charles Hamel, a private citizen, notice of his intent to commence an action to enforce the terms of Alyeska's National Pollutant Discharge Elimination System (NPDES) permit.[4] Subsequently, EPA ordered Alyeska to preserve all of its records pertaining to the facility. In July and November, 1985, EPA issued compliance orders enumerating violations at the BWT facility and requiring Alyeska to correct them.[5]

In connection with this investigation, Hamel turned over to EPA certain of Alyeska's corporate records that had been provided to him by Alyeska employees. In February, 1986, Alyeska requested disclosure, pursuant to FOIA, of the documents obtained from Hamel. EPA located 22 responsive documents, consisting of approximately 177 pages, but withheld them in full. The agency relied on Exemption 7 "because [the request was for] investigatory records compiled for law enforcement purposes the disclosure of which would identify the confidential source of these documents and investigative techniques and procedures."[6] Alyeska's administrative appeal was denied.[7]

Alyeska filed suit in the District Court in August, 1986. On cross-motions for summary judgment, the court held that EPA's refusal to produce the documents was justified by FOIA Exemption 7(A) because disclosure would interfere with EPA's ongoing law enforcement proceeding against Alyeska.[8] The court found that "Alyeska

---

1. 5 U.S.C. § 552 (1982 & Supp. IV 1986).

2. *Id.* § 552(b)(7)(A). Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings."

3. We are advised by EPA that subsequent to submission of this case for our decision, one facet of the investigation has been completed, although other aspects remain ongoing. In the absence of any indication that this development should affect our outcome, we dispose of the case on the basis of the written and oral arguments theretofore made.

4. Letter from Angus Macbeth, Attorney for Charles Hamel, to Lee M. Thomas (Mar. 27, 1985), Joint Appendix (J. App.) 33–41.

5. J. App. 89–102.

6. Letter from Ernesta B. Barnes to Maryann Armbrust (Feb. 13, 1986), J. App. 9; see 5 U.S.C. § 552(b)(7)(A) (1982 & Supp. IV 1986).

7. Although EPA released Hamel's one-page letter transmitting the contested documents to EPA, J. App. 31, no other material has been relinquished.

8. *Alyeska Pipeline Serv. Co. v. EPA*, Civ. No. 86–2176 (D.D.C. Sept. 9, 1987) (memorandum opinion), J.App. 106 [available on WESTLAW, 1987 WL 17071].

[was] not fully aware of the scope and focus of the EPA's investigation and that release of the[ ] documents could provide it with important insight in this respect,"[9] and thereby impede the agency's enforcement efforts. In addition, the court echoed EPA's concern that production of the records might allow Alyeska to identify the employees who supplied them to Hamel, and thereby subject them to potential reprisals and deter them from providing further information to EPA.[10] Alyeska argued that there was no reason to suspect that it would engage in employee harassment, but the District Court held that it "was not necessary to show that intimidation will certainly result";[11] rather, it was sufficient to establish that the possibility existed. " 'The danger of witness intimidation,' " the court said, " 'is particularly acute with respect to current employees ... over whom the employer, by virtue of the employment relationship, may exercise intense leverage.' "[12] Accordingly, the court granted summary judgment in favor of EPA.[13]

Alyeska argues on appeal that summary judgment was inappropriate because the parties' affidavits conflicted in regard to whether disclosure could reasonably be expected to interfere with EPA's law enforcement proceeding. Alyeska also argues that the District Court did not examine the agency's exemption claim de novo, as required by FOIA.[14] We reject these contentions and affirm.

## II

■ FOIA's disclosure requirements do not apply to "records or information compiled for law enforcement purposes ... to the extent that [their] production ... could reasonably be expected to interfere with enforcement proceedings."[15] The agency has the burden of demonstrating that the exemption applies.[16] Since Alyeska concedes that the documents in question qualify as "records or information compiled for law enforcement purposes,"[17] the remaining question is whether release "could reasonably be expected to interfere with enforcement proceedings."[18]

■ In support of its motion for summary judgment, EPA submitted the affidavit of John Y. Hohn, Associate Counsel for EPA Region 10, who actively participated in the supervision of EPA's investigation of Alyeska.[19] According to the affidavit,

9. *Id.* at 6, J.App. 111.

10. *Id.* at 6–7, J.App. 111–112.

11. *Id.* at 7, J.App. 112.

12. *Id.* (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 239–240, 98 S.Ct. 2311, 2326, 57 L.Ed.2d 159, 177 (1977)).

13. The District Court also denied Alyeska's motion for a *Vaughn* index. See *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Because Alyeska itself created the records at issue, the court concluded that provision of a list of the documents would be tantamount to disclosing them in full, thereby causing "exactly the kind of harm to [Alyeska's] law enforcement proceedings which it is trying to avoid under exemption 7(A)." *Alyeska Pipeline Serv. Co. v. EPA, supra* note 8, at 8, J.App. 113. This aspect of the court's ruling is not challenged on appeal.

14. See 5 U.S.C. § 552(a)(4)(B) (1982).

15. 5 U.S.C. § 552(b)(7)(A) (1982 & Supp. IV 1986), quoted *supra* note 2.

16. *NLRB v. Robbins Tire & Rubber Co., supra* note 12, 437 U.S. at 236, 98 S.Ct. at 2324, 57 L.Ed.2d at 174–175; *Bevis v. Department of State*, 255 U.S.App.D.C. 347, 349, 801 F.2d 1386, 1388 (1986).

17. *Alyeska Pipeline Serv. Co. v. EPA, supra* note 8, at 3, J.App. 108.

18. See *Bevis v. Department of State, supra* note 16, 255 U.S. App.D.C. at 349, 801 F.2d at 1388; *Campbell v. HHS*, 221 U.S.App.D.C. 1, 4, 682 F.2d 256, 259 (1982). We note that the District Court quoted the pre-amendment version of Exemption 7(A), which required a showing that disclosure of the requested records "would interfere" with enforcement proceedings instead of "could reasonably be expected to interfere." *Alyeska Pipeline Serv. Co. v. EPA, supra* note 8, at 3, J.App. 108. This inaccuracy, however, does not impact upon our disposition, for if it had any effect at all, it would have indicated that the court required EPA to meet a higher standard than FOIA now demands.

19. Affidavit of John Y. Hohn, attachment to EPA's Statement of Material Facts, *Alyeska Pipeline Serv. Co. v. EPA, supra* note 8 (filed Dec. 12,

EPA's investigation encompasses possible violations of numerous environmental protection statutes, including the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act, and the Toxic Substances Control Act.[20] Hohn averred that during EPA's investigation, he engaged in "detailed, confidential conversations with Mr. Hamel" during which he "requested that Mr. Hamel provide [Hohn] with documents that pertained to specific allegations of statutory violations by Alyeska that would serve to substantiate portions of his notice of citizen's suit."[21] Hamel thereafter delivered the records at issue, which, according to Hohn, "pertained to the narrow areas of inquiry that I had discussed with Mr. Hamel."[22] Hohn further stated that the materials "constitute but a small portion of the total amount of Alyeska documents Mr. Hamel was prepared to provide to EPA."[23]

To demonstrate that release would likely interfere with law enforcement proceedings, the Hohn affidavit asserted that disclosure would "prematurely reveal[] to the subject of this ongoing investigation the size, scope and direction of this investigation."[24] Hohn reasoned that because Hamel provided only "a limited number of selected documents in response to my request for certain documents that evidenced particular types of alleged illegal behavior, the mere identification of the specific records submitted would reveal the scope and direction of the investigation to the requester."[25] Put in other words, Hohn's point was that because the materials handed over to EPA were selectively chosen,

identification of the documents would expose the particular types of allegedly illegal activities being investigated.[26] Hohn therefore concluded that disclosure could "allow for the destruction or alteration of relevant evidence, and the fabrication of fraudulent alibis."[27]

Hohn further averred that revelation of the documents could enable Alyeska to identify the individuals who gave them to Hamel, with the consequence that "these potential witnesses would be less likely to cooperate fully with the EPA."[28] Hohn reasoned that the employees would feel more vulnerable to potential reprisals than other witnesses, and that Mr. Hamel repeatedly emphasized that the employees who provided the records were "fearful of financial and physical retribution from Alyeska if their identities were discovered."[29] Hohn also asserted that release at this time would chill future investigations by discouraging witnesses from providing information.

Hitherto we have realized that it is not enough for an agency to shore up its exemption claim merely with general and conclusory statements regarding the effect of disclosure.[30] In this case, however, the Hohn affidavit does not suffer from such deficiencies, and the justifications it proffers have achieved recognition in Exemption 7 caselaw.

In *NLRB v. Robbins Tire & Rubber Company*,[31] an employer charged with unfair labor practices sought, in advance of the administrative hearing on those charges, to obtain copies of statements submitted to NLRB by prospective witness-

1986), J.App. 19–25 [hereinafter Hohn Affidavit].

**20.** *Id.* ¶ 7, J.App. 21.

**21.** *Id.* ¶ 9, J.App. 21–22.

**22.** *Id.* ¶ 9, J.App. 22.

**23.** *Id.*

**24.** *Id.* ¶ 13, J.App. 23.

**25.** *Id.*

**26.** See *Willard v. IRS*, 776 F.2d 100, 103 (4th Cir.1985) (copies of notes made by IRS agents

during interviews properly withheld where "selectivity in recording would certainly provide clues to the appellants of the nature and scope of the investigation").

**27.** Hohn Affidavit, *supra* note 19, ¶ 13, J.App. 23.

**28.** *Id.* ¶ 14, J.App. 24.

**29.** *Id.*

**30.** See *Campbell v. HHS, supra* note 18, 221 U.S.App.D.C. at 9, 682 F.2d at 264.

**31.** *Supra* note 12.

es. The agency denied the request, claiming that prehearing disclosure would interfere with enforcement proceedings, and the Supreme Court upheld the agency's position. The Court noted that in enacting Exemption 7, "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases." [32] The Court observed that "[t]he most obvious risk of 'interference' with enforcement proceedings in this context is that employers or, in some cases, unions will coerce or intimidate employees and others who have given statements, in an effort to make them change their testimony or not testify at all." [33] The Court stressed the danger of giving a party litigant earlier and greater access to the agency's case than he would otherwise have, and declared that even without intimidation or harassment a suspected violator with advance access thereto could " 'construct defenses which would permit violations to go unremedied.' " [34]

Our review of EPA's submissions in this case thus leads us to the conclusion that the agency has met its burden of establishing that Exemption 7(A) is broad enough to intercept the documents in dispute.

### III

We confront, however, Alyeska's principal argument on this appeal: that the summary judgment obtained by EPA was inappropriate because conflicts in the parties' affidavits posed genuine issues of material fact which necessarily precluded a summary disposition by the District Court.

■ Summary judgment may be rendered only when it is properly shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [35] We have repeatedly emphasized that FOIA cases are not immune to summary judgment requirements.[36] Very recently, in *Washington Post Company v. Department of State*,[37] we declared that "when the litigants quarrel over *key factual premises* for a determination [of the probable consequences of releasing particular information], we have unhesitatingly ruled that summary judgment is inappropriate." [38] Alyeska, however, endeavors to cull from *Washington Post* the proposition that anytime the parties' affidavits disagree on the probable consequences of a disclosure, summary judgment is barred.[39] This reading is obviously too broad, for it would mean that any motion for summary judgment could readily be defeated by submission of a counteraffidavit that merely draws from a single set of uncontroverted facts a conclusion different from that reached by the agency. If FOIA parties could routinely block summary judgment in this fashion, many unmeritorious FOIA cases could not be disposed of prior to a

**32.** 437 U.S. at 224, 98 S.Ct. at 2318, 57 L.Ed.2d at 167.

**33.** *Id.* at 239, 98 S.Ct. at 2325, 57 L.Ed.2d at 176.

**34.** *Id.* at 241, 98 S.Ct. at 2326, 57 L.Ed.2d at 178 (quoting *New England Medical Center Hosp. v. NLRB*, 548 F.2d 377, 382 (1st Cir.1976), in turn quoting *Title Guarantee Co. v. NLRB*, 534 F.2d 484, 491 (2d Cir.), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976)). Similarly, in *Campbell v. HHS, supra* note 18, we ourselves distinguished the situation faced there from the typical Exemption 7 context, where the problem is that "an actual or potential target of an ... enforcement proceeding ... seeks early discovery of the strength of the government's case in order to tailor his defense." 221 U.S.App.D.C. at 10, 682 F.2d at 265.

**35.** Fed.R.Civ.P. 56(c) ("[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

**36.** *Washington Post Co. v. Department of State*, 268 U.S.App.D.C. 146, 149, 840 F.2d 26, 29 (1988); *Afshar v. Department of State*, 226 U.S. App.D.C. 388, 406, 702 F.2d 1125, 1143 (1983); *Londrigan v. FBI*, 216 U.S.App.D.C. 345, 355–356, 670 F.2d 1164, 1174–1175 (1981).

**37.** *Supra* note 36.

**38.** 268 U.S.App.D.C. at 150, 840 F.2d at 30 (emphasis added).

**39.** Brief for Appellant at 15.

trial. To be sure, if material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available. But if, on the other hand, neither of these two scenarios is present, a motion for summary judgment adequately underpinned is not defeated simply by a bare opinion or an unaided claim that a factual controversy persists.[40]

In the case at bar, the affidavit submitted by Aleyska did not draw into issue any factual premise essential to the position elucidated in EPA's affidavit. Rather, upon close examination, the supposed conflicts between the two affidavits turn out to be illusory. They purportedly arise through the affidavit of Ivan Henman, an Alyeska employee in charge of a task force established by the company to respond to EPA's investigation.[41] Henman asserted that Alyeska knows the scope of the investigation undertaken by EPA, and consequently that release of the sought-after documents would not provide the company with any new insight in this regard.[42] Henman relied upon EPA's numerous requests for information, its interviews with employees, and two compliance orders issued against Alyeska in an effort to support the contention that "[t]hrough all of this interaction, the *general scope* of the agency's investigation has been made clear as have the specific alleged activities which might constitute violations of the Clean Water Act."[43] It is evident, however, that a party's purported knowledge of the "general" scope of an investigation is a far cry from specific knowledge of the particular activities being investigated and the direction being pursued. Furthermore, although Alyeska asserts that it is aware of "the specific alleged activities which might constitute violations of the Clean Water Act," EPA has made plain that its investigation encompasses numerous other environmental statutes as well.[44] Nor is it reasonable to conclude that the compliance orders addressed all aspects of EPA's investigation. Henman's affidavit presented no reliable evidence to support this alleged knowledge; in sum, therefore, his assertion that he knows the scope of the investigation is really nothing more than speculation.[45]

A second purported conflict alleged by Alyeska concerns the question whether release of the documents would allow identification of the employees who provided the documents, and thereby subject them to the risk of harassment or reprisals, or discourage them from cooperating in the investigation. The Henman affidavit asserted that through newspaper accounts of the EPA investigation he is "familiar with the documents which the reporters either described or named in their articles."[46] As to those documents, he "knows" that each was handled by at least fourteen Alyeska management personnel as well as other employees, and that it therefore would "be impossible to track down each person who had contact with them and determine if he or she had kept a copy for private use."[47] Henman did not contend, however, that the press reports revealed the identity of all 22 documents at issue in this case. Thus, his affidavit leaves open the prospect that

---

**40.** See *Gardels v. CIA*, 223 U.S.App.D.C. 88, 94 n. 5, 689 F.2d 1100, 1106 n. 5 (1982) (Exemption 3 case—affiant's "views" insufficient to raise triable issue); *Curran v. Department of Justice*, 813 F.2d 473, 477 (1st Cir.1987) (Exemption 7(A) case); *Spannaus v. Department of Justice*, 813 F.2d 1285, 1289 (4th Cir.1987) (same).

**41.** Affidavit of Ivan Henman, attachment to Alyeska's Statement of Material Facts, *Alyeska Pipeline Serv. Co. v. EPA, supra* note 8, (filed Jan. 7, 1987), J.App. 67–70 [hereinafter Henman Affidavit].

**42.** *Id.* ¶ 5, J.App. 69.

**43.** *Id.* (emphasis added).

**44.** Hohn Affidavit, *supra* note 19, ¶ 7, J.App. 21.

**45.** See Fed.R.Civ.P. 56(e) ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

**46.** Henman Affidavit, *supra* note 41, ¶ 3, J.App. 68.

**47.** *Id.*

Alyeska could track the individuals who supplied some of the documents. Moreover, even if we were to assume that all documents were handled as Henman described, it would not follow that their release could in no way aid Alyeska, even in combination with other information, in discerning responsible employees. We are once again led to conclude that the affidavit's contents on this matter are more surmise than fact, and that Alyeska has not pointed to a genuine issue of material fact that would preclude summary judgment.

■ Alyeska's final contention is that the District Court did not consider de novo the agency's claim of exemption.[48] It bases this argument solely on the court's comment that "[t]he affidavits of a government agency in FOIA are to be given substantial weight by a reviewing court."[49] This observation, says Alyeska, is "a clear sign that [the court] failed to exercise the requisite de novo scrutiny to EPA's affidavit,"[50] and as such mandates reversal. We note that the District Court supported its statement by citation to two FOIA Exemption 1 cases involving issues of national security, where courts accord "substantial weight" to an agency's affidavit.[51] In this circuit, however, we have not found it appropriate to extend any special deference beyond the Exemption 1 context.[52]

Nonetheless, we believe that Alyeska has misassessed the significance of the District Court's statement. The affidavits of both parties are to be given the weight they are due on the basis of their contents. We have held that EPA's affidavit discharged its burden and that no genuine issue of material fact was presented. Our conclusion that summary judgment was appropriate thus requires no deference at all to the agency.[53] Additionally, the District Court's opinion provides adequate evidence that the parties' submissions were reviewed in their entirety. The judgment of the District Court is accordingly

AFFIRMED.

**48.** See 5 U.S.C. § 552(a)(4)(B) (1982) ("the district court ... shall determine the matter de novo ...").

**49.** *Alyeska Pipeline Serv. Co. v. EPA, supra* note 8, at 5, J.App. 110.

**50.** Brief for Appellant at 24.

**51.** *Hayden v. National Sec. Agency,* 197 U.S.App. D.C. 224, 227, 608 F.2d 1381, 1384 (1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Gardels v. CIA, supra* note 40, 223 U.S.App.D.C. at 92, 689 F.2d at 1104.

**52.** *Washington Post Co. v. Department of State, supra* note 36, 268 U.S.App.D.C. at 153–155, 840 F.2d at 33–35; *Arieff v. Department of Navy,* 229

U.S.App.D.C. 430, 435, 712 F.2d 1462, 1467 (1983); see also *Ferri v. Bell,* 645 F.2d 1213, 1221 (3d Cir.1981).

**53.** Furthermore, the District Court cited *Gardels v. CIA, supra* note 40, for the proposition that "[o]nce satisfied that proper procedures had been followed and that the information logically falls into the exemption claimed, the courts 'need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith.'" 223 U.S.App.D.C. at 92, 689 F.2d at 1104 (quoting *Weissman v. CIA,* 184 U.S.App.D.C. 117, 122, 565 F.2d 692, 697 (1977)). It thus appears that the court may well have used the phrase "substantial weight" in a much more benign sense than Alyeska would ascribe to it.