

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2006

# Hutchins v. UPS Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Hutchins v. UPS Inc" (2006). *2006 Decisions.* Paper 619.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/619

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4000

NATHANIEL HUTCHINS,
                              Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE, INC.,
                              Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil Nos. 01-CV-1462, 02-CV-4274
District Judges: The Honorable William J. Martini
and the Honorable William G. Bassler

Submitted Under Third Circuit LAR 34.1(a)
June 28, 2006

Before: BARRY, VAN ANTWERPEN and SILER,[*] <u>Circuit Judges</u>

(Opinion Filed:   August 3, 2006)

OPINION

---

  [*] The Honorable Eugene E. Siler, Jr., Circuit Judge, United States Court of Appeals for
the Sixth Circuit, sitting by designation.

SILER, <u>Circuit Judge</u>

Plaintiff Nathaniel Hutchins sued United Parcel Service, Inc. ("UPS") for retaliation and race discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). The district court dismissed some claims as duplicative and granted UPS summary judgment on the remainder. Hutchins appeals those decisions and also a $2,500 sanction imposed upon his counsel by the district court for failure to comply with the Local Rules. For the following reasons, we affirm.

**BACKGROUND**

Given that the parties are intimately familiar with the facts of the case, we provide only a short summary of the relevant facts. Hutchins is an African-American male who has worked for UPS's management workforce since 1977. Beginning employment as a Grade 14 supervisor, the lowest tier of the UPS management structure, he was promoted to a Grade 16 manager position in 1985 and, with one brief exception, has remained in that capacity ever since. The exception to his tenure as a Grade 16 manager occurred in 1986 when he was demoted to Grade 14. As a result of this demotion, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge was dropped when, shortly after institution of his claim, UPS re-promoted him to Grade 16.

In 1994, an African-American UPS employee, Leslie Morgan, filed a class action lawsuit against UPS in the Eastern District of Missouri claiming various instances and

2

patterns of race discrimination against African-American employees by UPS. *See Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349 (E.D. Mo. 1996). In 1997, Hutchins began actively supporting the *Morgan* class action. Ultimately, UPS was granted summary judgment on the class claims and, in May 2002, the *Morgan* court dismissed with prejudice the class action complaint. *See Morgan United Parcel Serv. of Am., Inc.*, 143 F.Supp.2d 1143 (E.D. Mo. 2000).

On May 30, 2000, Hutchins filed a charge with the EEOC alleging both race discrimination and retaliation for his opposition to race discrimination. He was issued a "right to sue" letter and, in March 2001, Hutchins filed a complaint in the District of New Jersey asserting three retaliation claims against UPS under Title VII, § 1981, and the NJLAD ("*Hutchins I*"). In August 2001, the magistrate judge entered a scheduling order that barred amendments to the existing complaint after November 1, 2001. Hutchins failed to take any action amending his complaint until March 1, 2002, when he requested leave to amend his complaint to assert an additional retaliation claim occurring after the November 1 deadline and to also add race discrimination claims occurring prior to November 1 that he had, to this point, asserted only in his EEOC charge. The court allowed the additional retaliation claim to proceed, but denied Hutchins's attempt to add the race discrimination claims to his complaint, stating that it would not "allow any other claim that should have been raised by my prior order as of November 1 and was not raised."

In August 2002, Hutchins filed suit against UPS for a second time in the District of New Jersey ("*Hutchins II*"). In that suit, he asserted race discrimination claims under § 1981

3

and the NJLAD – claims that the court had refused to allow him to assert in *Hutchins I*. Later, the district court dismissed all of the race discrimination claims in *Hutchins II* arising before November 1, 2001, as duplicative of *Hutchins I*. However, those race discrimination claims arising after November 1, 2001, were allowed to proceed and they were consolidated into *Hutchins I*. Eventually, the district court granted summary judgment to UPS on all of the retaliation claims in *Hutchins I*. Then, in July 2005, Hutchins's remaining claims – the post-November 1, 2001 race discrimination claims from *Hutchins II* that had been consolidated into *Hutchins I* – were dismissed when the district court granted summary judgment to UPS.

## DISCUSSION

### 1. Retaliation Claims

Beginning with the retaliation claims asserted in *Hutchins I*, Hutchins alleged eight specific acts of retaliation by UPS in violation of Title VII, § 1981, and the NJLAD. These claims can be grouped into four separate categories: (1) various instances of alleged retaliation occurring before 1996; (2) UPS's allegedly retaliatory relocation of Hutchins to a different facility in 2001 in order to make his commute inconvenient; (3) UPS's failure to promote Hutchins to a Grade 18 manager position and, instead, its promotion of Dwayne Meeks and Nicholas Marich to Grade 18 manager in 1999 and 2000; and (4) Hutchins's claim that he was paid less than other similarly-situated employees. Each category of claims will be dealt with in turn.

"[T]o establish a *prima facie* retaliation claim under Title VII, § 1981, or the

[NJLAD], [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (citations omitted). We review the district court's grant of summary judgment *de novo*. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).

*a. Pre-1996 Claims*

Hutchins asserted the following acts of retaliation, each occurring prior to 1996: (1) UPS's belated promotion of him to Grade 16 manager; (2) his demotion to Grade 14 supervisor in 1986; and (3) Division Manager Ronald McClain's harassment of him in 1995. The district court found each of these claims time-barred under Title VII, § 1981, and the NJLAD. Also, the district court rejected Hutchins's continuing violation argument with respect to the harassment claim.

Hutchins does not contest the district court's conclusion that these claims were time-barred under the relevant statutes. Accordingly, Hutchins has waived this issue on appeal and we need not address it. *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005).

*b. Relocation Claim*

In his complaint, Hutchins also claimed that UPS retaliatorily transferred him to a different facility in 2001 making his commute much more inconvenient. However, on appeal, Hutchins fails to contest the district court's grant of summary judgment to UPS. Accordingly, the issue is deemed waived. *See id.* Moreover, Hutchins admitted below that

5

he did not have any facts to support his claim that the transfer was in retaliation for any protected activities.

*c. Failure to Promote Claim*

Hutchins does contest the district court's grant of summary judgment to UPS on his failure to promote claim. This claim involves Hutchins's allegation that UPS retaliated against him for the exercise of protected activities by not promoting him to Grade 18 manager and by promoting Meeks and Marich to Grade 18 instead. The district court ruled that some of Hutchins's claims relating to this failure to promote were time-barred under both Title VII and the NJLAD.[1] The district court ruled that, on the merits of those claims and also on the merits of Hutchins's timely claims, Hutchins had failed both to establish a *prima facie* case or to rebut UPS's legitimate, non-discriminatory reasons for not promoting him. Hutchins claims that the district court committed three errors in so ruling: (1) the district court never ruled upon his claim of retaliation for UPS's failure to consider him for promotion to Grade 18; (2) there was sufficient evidence to establish a causal connection and a *prima facie* case given his showing that various Division Managers' knowledge and disapproval of his protected activities influenced John McGuire's decision-making process; and (3) he in fact rebutted UPS's stated non-discriminatory reason for not promoting him.

First, although Hutchins attempts to assert a continuing failure to promote claim, a

---

[1] Hutchins does not contest the district court's ruling that his retaliatory failure to promote claims with regard to Meeks are time-barred under Title VII and the NJLAD. Therefore, any argument on that issue has been waived. *See Pelullo*, 399 F.3d at 222.

6

failure to promote is a "discrete act" that is "easy to identify" and each incidence of a retaliatory failure to promote "constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Therefore, Hutchins is required to point to specific instances in which he was allegedly not promoted for retaliatory reasons. Here, Hutchins pointed to two specific instances – Meeks's 1999 promotion to Grade 18 manager and Marich's 2000 promotion to Grade 18 manager. The district court analyzed Hutchins's retaliation claims in both instances.

Second, Hutchins contests the district court's finding that he could not establish a *prima facie* case since he presented no evidence showing a causal connection between the protected activity and the adverse employment action. Although there is no evidence that McGuire knew anything of his protected activities, Hutchins argues that other "Division Managers knew of [those] activities" and those Division Managers ultimately influenced McGuire's decision. This, he claims, demonstrates that retaliatory motive infected the process and is sufficient to establish a causal connection.

Indirect evidence of retaliation may suffice to establish a causal connection. *Abramson v. William Paterson College*, 260 F.3d 265, 288 (3d Cir. 2001). Moreover, "it plainly is permissible . . . to conclude that an evaluation at any level, if based on discrimination, influenced the decisionmaking process and thus allowed discrimination to infect the ultimate decision." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 727 (3d Cir. 1988). While Hutchins has clearly presented evidence that (1) McGuire relied upon the opinions of other Division Managers in making promotion decisions and (2) at least some Division

7

Managers knew of Hutchins's involvement in various protected activities, he identifies no evidence showing that any of the Division Managers' recommendations or evaluations was based upon retaliatory animus. Therefore, he has failed to meet his burden of producing sufficient evidence of a causal connection to establish a *prima facie* case.

Third, even assuming that Hutchins met his burden in proving a *prima facie* case, UPS responded with a legitimate, non-discriminatory reason for passing over Hutchins for promotion, as summarized by the district court:

> Defendant maintains that plaintiff was not promoted because of his performance record. It is uncontested that plaintiff's name was never submitted by any Grade 18 manager for promotion. Instead, many of the managers had concluded that plaintiff's work was deficient and that he needed improvement.

"Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

Hutchins fails to offer sufficient evidence for a reasonable factfinder to conclude that UPS's explanation is pretextual. Although he repeatedly claims that he was qualified for the position and attributes any deficient performance explanation to "personality conflicts" stemming from EEOC complaints he had made in the past, he points to no evidence, circumstantial or otherwise, supporting his claim. He does claim that there are "highly specific facts to establish his strong performance" and qualifications for promotion, such as higher performance scores on preload, record productions levels on preload, and an

8

exemplary record of community service. Nevertheless, he offers no evidence that these are the primary factors UPS considers for promotion and, as the district court noted, does "not demonstrate[] that other criteria, such as his communication skills or motivation, were not wanting." Furthermore, despite his attempts to impeach certain portions of testimony from various UPS employees, he highlights no serious inconsistencies or irregularities concerning his case. In the end, Hutchins has simply presented little, if any, evidence to rebut UPS's legitimate, non-discriminatory reason.

### d. Discriminatory Pay Claim

Hutchins's last claim of retaliation alleged that UPS consistently paid him less money than similarly-situated employees. In support of this claim, Hutchins relied primarily upon summary charts prepared by his attorney, Jacqueline Bittner, comparing the compensation levels of various UPS employees. These charts, he claims, "left no doubt that he, and at least one other member of the *Morgan* class, consistently received lower percentage pay raises than white managers." The district court refused to allow these charts into evidence, finding that they were a violation of Local Rule 7.2(a) in that they did not "reflect Ms. Bittner's personal knowledge, but [only] her factual arguments as to how the documents produced in this litigation should be interpreted." The district court ultimately ruled that Hutchins had failed to establish a *prima facie* case regarding retaliatory pay raises since he could not establish that the raises were retaliatory. Hutchins argues that the summary charts are in fact admissible.

Affidavits shall be restricted to statements of fact within the personal

> knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summation in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both.

L. Civ. R. 7.2(a). This rule has repeatedly been employed by courts in the District of New Jersey. *See, e.g., Constr. Drilling, Inc. v. Chusid*, 63 F.Supp.2d 509, 514 (D.N.J. 1999). The affidavit and charts at issue here were prepared by counsel and summarized the findings of various UPS payroll documents. While Federal Rule of Evidence 1006 allows the contents of voluminous writings to "be presented in the form of a chart, summary, or calculation," the admission of such charts and summaries is generally a matter of judicial discretion. FED. R. EVID. 1006; *see Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 300-301 (3d Cir. 1961).

Here, Bittner's declaration is clearly problematic. Her declaration is extremely argumentative and includes various instances of legal analysis and factual argumentation – a clear violation of Rule 7.2(a). Given this violation of Rule 7.2(a), the district court did not abuse its discretion in striking the offending declaration and the accompanying charts from the evidence presented.

Turning to the merits of this retaliation claim, even looking at the stricken summary charts, Hutchins received the lowest salary based upon percentage increase in only two of the seven years for which charts are available. Moreover, he presents no evidence linking his pay with discrimination and thus fails to establish a causal connection between his pay level and his protected activities. In the end, the district court correctly ruled that Hutchins

had failed to establish a *prima facie* case of retaliation based upon these pay raises.

## 2. Pre-November 1, 2001 Discrimination Claims

Hutchins also contests the dismissal of the pre-November 1, 2001 race discrimination claims asserted in *Hutchins II*. The district court found these claims to be duplicative of the litigation in *Hutchins I*. It ruled that these claims should have been part of *Hutchins I* and the filing of *Hutchins II* was nothing more than an effort to "disregard to the deadlines set by the Magistrate Judge [concerning the timelines and deadlines for amending the complaint in *Hutchins I*] and use this action as an end-run around Judge Arleo's rulings."

A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc) (citation omitted). In the present case, the retaliation claims in *Hutchins I* and the race discrimination claims in *Hutchins II* involve the same parties and were both filed in the same court. Moreover, Hutchins concedes that the retaliation claims and the pre-November 1, 2001 race discrimination claims are based upon the same facts. Thus, Hutchins would normally be required to bring those claims in one setting and subsequent litigation attempts would be held duplicative. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000).

However, Hutchins argues that the normal duplicative litigation rule should not apply in this case since he was unable to bring the *Hutchins II* race discrimination claims any earlier due to the ongoing litigation in the *Morgan* class action. That litigation, he claims, encompassed his individual claims of race discrimination and, as a member of that class with

11

no right to opt out, he was prevented from bringing his racial discrimination claims until that litigation was concluded. Given the *Hutchins I* court's refusal to allow him to amend his complaint, he argues that the filing of *Hutchins II* was necessary to pursue his race discrimination claims.

Despite Hutchins's arguments, the district court's dismissal of the pre-November 1, 2001 race discrimination claims as duplicative was not an abuse of discretion. As the district court noted,

> There are many steps Plaintiff's counsel could have taken to protect the rights of Plaintiff to bring the discrimination claims in *Hutchins I*. Plaintiff's counsel could have amended the Complaint in *Hutchins I* before the date outlined by Judge Arleo's order and requested that the Court stay the action, or stay discovery on the discrimination claims, pending a determination of the *Morgan* class action. In the alternative, Plaintiff's counsel could have requested an order from the Court protecting Plaintiff's right to amend the *Hutchins I* Complaint to add the discrimination claims once *Morgan* was adjudicated in full.

Instead, Hutchins chose to do none of these things and, in fact, watched the November 2001 deadline for amending his complaint pass without any objection or inquiry about the race discrimination claims. We have previously warned that courts "must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints." *Walton*, 563 F.2d at 71. Here, the court's deadline for amendment of the complaint clearly put Hutchins on notice that action was needed before November 1 to protect any other potential claims he wished to assert. Nonetheless, Hutchins failed to take any action to protect his claims and, accordingly, the district court did not abuse its discretion in ruling the assertion of those

12

claims in another lawsuit, *Hutchins II*, was duplicative of the pending *Hutchins I* lawsuit.

### 3. 2002 Discriminatory Pay Claim

Unlike the pre-November 1, 2001 race discrimination claims, the district court allowed any post-November 1, 2001 race discrimination claims to proceed and they were consolidated into *Hutchins I*.  Hutchins's sole claim in this time period was that his pay raise in 2002 was discriminatory in that it was lower than similarly situated white employees in violation of § 1981 and the NJLAD.  In granting summary judgment to UPS on this 2002 discriminatory pay claim, the district court found that Hutchins had both failed to establish a *prima facie* case of race discrimination and, even assuming that he could establish a case, had failed to put forth any evidence of pretext.

Hutchins's discriminatory pay claims under § 1981 and the NJLAD are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Coward v. ADT Sec. Sys., Inc.*, 140 F.3d 271, 273 (D.C. Cir. 1998) (finding the *McDonnell Douglas* framework appropriate in a § 1981 suit involving intentional wage discrimination); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087-88 (3d Cir. 1996) (holding that unlawful discrimination claims under the NJLAD "parallel" Title VII claims and therefore employ the same *McDonnell Douglas* framework) (citing *Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 907-09 (N.J. 1990)).  In order to establish a *prima facie* case of discriminatory pay, Hutchins must demonstrate that he was performing work substantially equal to that of white employees who were compensated at higher rates. *Aman*, 85 F.3d at 1087.

13

Hutchins seeks to meet his burden of establishing a *prima facie* case by focusing exclusively upon those Grade 16 managers who reported to and received raises from Thomas Valley. While focusing upon the pay raise received by each of these individuals, Hutchins presents no evidence concerning the type of work performed by the other Grade 16 managers except to say that these individuals "were Grade 16 Managers like Hutchins." He does claim that "UPS has never contested that Hutchins performed substantially the same work as his four comparators, the other Grade 16 Managers who reported to Valley." However, this argument fails to recognize that Hutchins bears the burden of proving by a preponderance of the evidence that these other employees performed substantially equal work. *See Coward*, 140 F.3d at 273 (citing *Aman*, 85 F.3d at 1087). The district court properly ruled that Hutchins had failed to meet this burden and, thus, had failed to establish a *prima facie* case. *Cf. Aman*, 85 F.3d at 1087 (suggesting that a plaintiff's reliance "almost exclusively on a comparison of Furniture employees' job grade levels" did little "to demonstrate that the jobs performed by the white employees were the same or that the employees had similar credentials").

Even assuming that Hutchins has made out a *prima facie* case, UPS has put forward a legitimate, non-discriminatory reason for Hutchins's raise – Hutchins received the raise that he warranted based upon UPS's criteria for awarding raises. Having proffered a legitimate, non-discriminatory reason for its actions, the burden shifts back to Hutchins to "convince the factfinder 'both that the reason was false, and that discrimination was the real reason.'" *Fuentes*, 32 F.3d at 763 (citation and emphasis omitted). Despite Hutchins's claims to the

contrary, Valley's deposition testimony and his reply affidavit are not contradictory. Valley clearly states that he used UPS's four recommended criteria in determining Hutchins's raise. Moreover, the evidence in the record supports UPS's assertion that Hutchins received the raise that Valley felt he deserved based upon UPS's stated criteria. Apart from Valley's affirmance of this fact, the 2002 Salary Recommendation Worksheet shows that Hutchins was the only individual in his self-selected "peer group" who received a "less than expected" performance ranking. Overall, Hutchins points to no evidence, other than his statement that Valley's testimony was contradictory, to prove that UPS's legitimate, non-discriminatory reason was pretextual. Accordingly, the district court's grant of summary judgment was proper.

## 4. Imposition of Sanctions

Lastly, we must examine the district court's sanction of Hutchins's counsel. The district court imposed a $2,500 sanction on Bittner for "exceeding the mandated page limit" in violation of Rule 7.2(b) and for "containing arguments of fact and law" in her declarations in violation of Rule 7.2(a).[2] District of New Jersey Local Civil Rule 7.2 states:

> (a) Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both.
>
> (b) Any brief shall . . . not exceed 40 ordinary typed or printed pages . . . excluding pages required for the table of contents and authorities. Briefs of

---

[2] *See supra* § 1.d. (discussing Bittner's Declaration and its violation of Rule 7.2(a))

15

greater length will only be accepted if special permission of the Judge or Magistrate Judge is obtained prior to submission of the brief.

L. Civ. R. 7.2. The imposition of sanctions is reviewed by an appellate court for abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991).

To the extent Bittner contests the court's authority to sanction her, she is mistaken. First, Rule 7.2(a) expressly grants district courts this authority. Second, a court is also "endowed with certain powers inherent in its authority to administer justice in cases before it. This power may be invoked to regulate the conduct of lawyers appearing before it and, when necessary, may be invoked to impose sanctions on those lawyers who violate . . . the Local Rules." *Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 161 (D.N.J. 1999) (citing *Chambers*, 501 U.S. at 43).

Notably, Bittner does not contest on appeal the finding that her brief to the district court was over-length in violation of Rule 7.2(b). Moreover, in the hearing before the district court, she expressly stated, "I concede to the Court that there are arguments of fact in my affidavits." Her justification for the inclusion of these arguments – that Rule 7.2(a) only forbids arguments of fact and law, not arguments of fact or law – is clearly incorrect. *See Penn v. Wal-Mart Stores, Inc.*, 116 F.Supp.2d 557, 560 n.3 (D.N.J. 2000); *Eckhaus v. Consol. Rail Corp.*, No. Civ. 00-5748, 2003 WL 23205042, at *6 (D.N.J. Dec. 24, 2003) (unreported). Bittner's other arguments concerning the sanction are unpersuasive and need not be addressed here. In the end, given the violations of the Local Rules by Bittner, the district court's imposition of a $2,500 sanction cannot be deemed an abuse of discretion.

16

## CONCLUSION

For the foregoing reasons, we affirm.